Howard Goodfriend representing Virginia Mason Hospital, the appellant and plaintiff below. I'd like to reserve five minutes for rebuttal, if I may. The issue is whether the arbitrator in this case exceeded his authority under a collective bargaining agreement in requiring Virginia Mason to bargain with and reach agreement with the Washington State Nurses Association before it could implement a flu vaccination policy in the interest of patient care. Now, we recognize, and I think we did in our briefs, the heavy burden placed on a party seeking to set aside or vacate an arbitrator's award. But as this Court has held, I believe it was Judge McEwen's term in Hawaii Teamsters, an arbitration award is not bulletproof. And even under the standards established by the Supreme Court in the Steelworkers Trilogy and Enterprise Wheel, the Court has held that an arbitrator's award that has no basis in a collective bargaining agreement, but is instead based upon the arbitrator's own view of what is right and wrong, cannot be upheld. This is such a case because the collective bargaining agreement expressly gives Virginia Mason the right to adopt policies integral to patient care and precludes the association from interfering with policies with respect to patient care. But then the term, what is integral to patient care itself being a term of the contract is subject to an arbitrator's determination, isn't it? There's, I think in some cases that might be. I think it's possible that in some cases that might be. Isn't that always true? In a management rights clause that gives management the right to do X and the parties dispute what X means, isn't that just classically something that an arbitrator decides, the meaning of X? Well, if the arbitrator relies on the meaning of X based on words in the contract, yes. If the arbitrator relies upon industrial common law or the rule of the shop, that is possible. And the arbitrator purported to do that here. But we know that under federal labor law, patient care is at the core. It's the essence of what a hospital does. That's what the Supreme Court told us in Baptist Hospital. And, in fact, that's what the arbitrator or, I'm sorry, the administrative law judge of the NLRB held in the subsequent unfair labor practice case. That patient care and, in particular, the implementation of an infection control policy is at the core of what a hospital does. That is the essence of what a hospital does. And this is what Virginia Mason did here, was it implemented an infection control policy that required immunization in order to keep its patients healthy. Now, the CBA, as I said, expressly gave Virginia Mason the unilateral right to do that. And, in addition, the association expressly agreed that patient care was the first priority and that it would not interfere with patient care or the normal operation of the hospital. And this isn't just a general management responsibilities clause that says if it's not, if it says it's not, then it's not. If it's not central to an operation of a factory or a shop, then it's excluded from the collective bargaining agreement. This is a management responsibility clause that specifically termed patient care and specifically gave the nurses. Does the label control, I mean, suppose the hospital were to decide that the best method of controlling infection is to require the same nurses to work four days in a row without any time off. Because fewer people would be bringing germs into the hospital. Wouldn't that be the kind of thing that, even though it pertains to infection control, could also be a required subject of bargaining as to the terms and conditions of employment? I think if a policy states these are the hours that you must work and this is, these are basically the days you must work, then you're basically talking about a core. So it isn't, it isn't really the motive that trumps everything else. It's, it's, it's the central purpose of what you're attempting to do. I think it is indeed the motive. And in fact, I think it's really a semantic issue here in large respect. Because what the arbitrator focused on was the fact that if nurses did not comply with the terms and conditions of employment, they would not be able to work. With the flu immunization policy, they face the pain of discharge or discipline. But in fact, if, and as it subsequently did, Virginia Mason didn't put that in there, but just said, this is our policy, you must comply with it, and then left it to a determination of whether that was just cause or not, we wouldn't be here and have this argument. But there really isn't a difference. The violation of this policy. Whether or not that would be just cause for a discharge is still something that is expressly reserved to grievance and arbitration. And in fact, the big difference between the cases that deal with management rights clauses that have been cited to this Court are that they, in large part, deal with cases that address whether a person was properly terminated under a just cause provision. Whether the violation of a drug policy was something reserved to management and established just cause as a matter of law and took it away from arbitration. Here, this isn't a case about individual just cause. This is a case involving the implementation of a policy and the implementation of an infection control policy that not only under federal labor law is at the core and essence of what a hospital does, but is also at the core of what a hospital does. And is also basically expressly delegated to it and required to be delegated to it under federal and state law. Hospitals have to adopt infection control policies. They have no choice. They can't get licensed unless they do. They have to pay people under federal law, too, but the terms under which they do so is still a subject for bargaining. And I don't think the argument on the other side is that there's no requirement to have such a policy. But only that its terms have to be bargained to impasse or agreement. And our position is that, by definition, under both federal common labor law, under any law of the shop involving hospitals, and under this collective bargaining agreement, the adoption of a flu prevention policy or any other infection control policy, whether it be washing hands, getting rubella vaccinations, or anything else that tests the effectiveness of a flu prevention policy, and tells people how to control infections with respect to patients, is something that the hospital has the unilateral right to do. Let me ask you, there is a substitute policy that's been in effect since this ruling, and there was a 28-J letter that contained that. Is there anything in the record to show whether that substitute policy is somehow in violation of federal requirements for infection control? One way or the other, does it tell us that? Right. Because a great part of your argument is we have to do this in order to comply with federal law. And so my question is, does the substitute policy comply with federal law? Yeah, what federal law requires and what state law requires is that a hospital adopt an infection control policy. So it doesn't have to be the one that you're arguing for here. It could be a substitute one or a third one that we haven't thought of. No. And this does get to our public policy argument, which I think you're getting at. And the issue is not whether the arbitrator's ruling here prohibited hospital from implementing, which prohibited this flu immunization policy, conflicts with the express requirements of state and federal law with respect to flu immunization. But what it does conflict with is the express requirements of federal and state law that require a hospital to adopt an infection control policy, and which require a hospital to adopt flu immunization policies. And in answer to your question, no, the policy subsequently adopted, which was get a flu shot, or if you refuse, take medication, or if you refuse, be masked whenever you're in a patient care area for eight hours a day. Which was unilaterally adopted by the hospital after this case. It did not conflict not only with federal labor law, but it doesn't conflict with any positive requirement with respect to flu immunization programs. It's a valid flu immunization program. I think the point is that a hospital needs discretion to enact the specific parameters of such a flu immunization program, and that it violates not only the contract, but as I said, the law of the shop and federal labor law, for an arbitrator to tell a hospital that it must adopt this policy or another policy because there are some effects on the terms and conditions of employment. Any infection control policy, any flu policy adopted by a hospital is necessarily going to affect the terms and conditions of employment, on some level, because once you violate it, you are going to be subject to discipline. The issue is, is that something that unions and hospitals should, or in this case, have to, under a collective bargain agreement, bargain over? Our position is no. I'd like to reserve the rest of my time if I may. My name is Lauren Shereen. I represent the Washington State Nurses Association. Council seeks to avoid the implication of standard application of the rules to enforce labor arbitration awards by claiming that this case, unlike some of the other cases that we have seen and cited, did not involve the discharge of labor arbitration awards. It did not involve the discharge of somebody, but rather involved the prospective application of a policy, which incidentally would result in discharge of people. The point that is critical is that the parties agreed that that was the issue before the arbitrator. Both parties wanted this issue resolved before that difficult case faced them. So we are not able to wipe out the application of the rules that arbitration awards will be confirmed if the arbitrator drew his decision from the essence of the contract. And there can be no real dispute that he did so in this case. In that respect, I point out that the arbitrator interpreted the recognition clause, the preamble, the management's rights clause, the, quote, zipper clause, and even the past practice clause in reaching his decision. The hospital disagrees with that interpretation, even calling it not rational on paper. That's page 27 of its brief, but not rational is not the test. The test, as we have seen in Misko and the other cases, is did the arbitrator interpret? Here he clearly did. I want to address the cross-appeal, if I might. One of the issues, the issue on our cross-appeal, did the district court err in denying WSNA its attorney's fees for defending this award? We submit that it did. Federal labor policy strongly supports arbitration as a method of resolving labor disputes under a collective bargaining contract. The, in this case, the parties themselves have reinforced that policy by stating in its management's rights clause, or it's an arbitration clause, excuse me, that an arbitration award is final and binding and shall not be reviewed by a court. Notwithstanding that prohibition, when Virginia Mason received the unfavorable award, the district court did not approve it. They filed their motion to vacate. That necessitated the Washington State Nurses Association to defend, both in the district court and here, an arbitration decision that they had the right and the entitlement under both their contract and public labor law policy to believe was final and binding. Kelsa, what is your, you talked earlier about the general rules that apply to arbitration and the fact that there were no procedural arguments raised before the arbitrator as to the arbitrability of this dispute. But what is your specific response to what has been labeled the public policy argument, that is, that the hospital is required to have an infection control program of some kind? It has to do that, and there are a lot of other things it has to do. And I guess the question is where, in your view, is the line drawn about those things that must be bargained and those things that don't? For example, if the hospital said everybody has to wear clean clothing every day and wash their hands every time they go into a patient's room and the list of just basic cleanliness, is that something that has to be bargained? Not necessarily. It's important to remember that the hospital had an infection control policy before and after this dispute. This was not just an infection control policy that they imposed. It was a change to their standards of fitness for employment. The test is whether or not the policy is, quote, we all know it, explicit, well-defined, dominant, based on positive law and not general considerations. A generalized law or regulation that says the hospital must have an infection control policy does not give this kind of information. It is a public policy defense to imposing a mandatory flu shot because a mandatory flu shot is not part of any explicit or well-defined policy. Infection control policy generally is not a mandatory flu shot policy. Well, how do you know what one is? I mean, infection control policy, and maybe that's the reason you're saying that it was up to the arbitrator, but how much of that can be imposed unilaterally, if anything? I think that at some point, when the hospital decides to impose a mandatory flu shot, it's not just a matter of whether or not it's a mandatory flu shot. It's a matter of whether or not it's a mandatory flu shot. The hospital changes fundamental wages, hours, and working conditions. They have crossed the line, even under a general infection control policy. Okay, no wages and no hours are concerned here. We're looking at working conditions. That's true, but we're actually talking about employment, because this was not a policy that they wanted enforced, except upon paying additional taxes. This was a condition of employment. Well, so is my example. If you had a nurse who refused to wash hands, that presumably at some point would become an employment question as well, but yet you said, well, that's different. It is different. Why? It's different because, like an arbitrator, who is expected to interpret both the contract and the party's past practice and the circumstances, there are practices that are clearly understood by both parties that are not going to be and are not challenged as a violation of the duty to bargain or as a fundamental change in the practice of the arbitration process. But that is the issue for the arbitrator, and the courts, with all due respect, as long as the arbitrator is interpreting those conflicting issues under the contract, should not be second-guessing that. I want to point out that there is no law that says flu shots should be mandatory for any health care workers, much less nurses in acute care hospitals. In fact, no other hospital requires it. The state doesn't require it. The impact on the employees in this hospital was dramatic. And the association responded to that by filing agreements and, indeed, seeking an injunction before the initial implementation was withdrawn. Was there anything that indicated how many nurses were resistant to the idea of a flu shot? I mean, numbers of them got flu shots voluntarily, I suppose. There was nothing in the arbitration record, and I tried the case, that talked about the number of nurses who were resistant. But there was evidence that talked about the level of compliance. And the weird part about it was that we had a level of compliance before the policy. That was the year before. It was 55 percent. We didn't have statistics for that for the current year because they ran out of serum, and we were arguing the case before the next came up. So the short answer is not explicitly. Thank you for your attention. Thank you. Mr. Goodfriend, I think you have quite a bit of time left for rebuttal, if you'd like it. Well, hopefully I won't use it all. Judge Canby, in answer to your question, the undisputed facts that were, I believe, conceded by the association and recognized by the arbitrator were this. Despite having one of the most aggressive programs of voluntary flu vaccination and education in the country, and a recognized model of onsite vaccinations, Virginia Mason could only increase its vaccination rate to 55 percent in October 2004. Nobody disputes that. Flu virus remains the most significant threat to elderly hospital patients, and that 70 percent of healthcare workers continue to work while they're symptomatic or have the flu. And that vaccination is the most effective means of combating it. Those were the facts that motivated this, and those facts have not been disputed. Let me answer the public policy issue here. The Washington Department of Health, and I believe the regulation is WAC 246.320.265, states that the purpose of an infection control program is to identify and reduce the risk of infections and communicable diseases between patients and employees. It does not contain any specific requirements regarding influenza, but it does say that hospitals, you have to adopt a program, and this is the policy, this is the goal. And who gets to decide what that infection control policy is? Is it the hospital and the union as a matter of collective bargaining agreement? It isn't under federal labor law, and it isn't under this language in the collective bargaining agreement did the arbitrator look to. He looked to the preamble, which basically says that we've reached this agreement regarding terms and conditions of employment, that's all, and he looked to a union recognition clause that says the hospital recognizes the association as the nurse's exclusive bargaining representative. Every other provision of this agreement that he looked to says in unambiguous language that patient care is the first priority of the hospital, that the nurses won't interfere with patient care, and that management has the exclusive right to adopt rules and regulations to further patient care. This award does not draw its essence from any provision of the collective bargaining agreement. It does not draw its essence from any law of the shop or common law regarding hospitals. And if you look at what the NLRB ALJ said in that 28-J letter, I couldn't have said it better myself. He said this is what hospitals do. They adopt policies to protect their patients. That is their core mission. This award didn't draw its essence from the agreement. Mr. Goodfriend, would it make any legal difference if the policy was adopted but not made part of fitness for duty, as if the hospital just said flu vaccinations shall be mandatory? Which is what it did in 2006, basically. No, it would make no difference, because it would make no difference. It would make no difference. The issue would be, was there just cause for termination? If the nurse violated the policy that was enjoined by the arbitrator here, the issue would be, was there a violation, and is it grounds for termination? That would be something that the arbitrator would decide. And it would the distinction between adoption of a policy and implementation of the policy, I think, is very significant when you have a management rights clause, as you do here, that specifically delegates the role of adopting such policies to management. The one case that comes closest, I think, is the Third Circuit case, which was cited in the briefs, which is CITCO, which is a safety case involving the oil business, but it's similar in that respect, and it makes that distinction. I see my case just argued is submitted. And our next case on the calendar is Pacific Sound Resources versus the Burlington Northern Etcetera Railway. Thank you.
judges: Canby, Graber, Gould